# UNITED STATES DISTRICT COURT

DISTRICT OF _____OREGON_____

| | |
|---|---|
| UNITED STATES OF AMERICA <br> V. <br> JAMES V. REYES | **CRIMINAL COMPLAINT** |
| FILED '06 NOV 17 15:52USDC-ORP | Case Number: *06 MJ 526* |

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief.  On or about ___9/10/06-11/15/06___ in ___Washington___ County, in
the _____ District of _____Oregon_____ defendant(s) did,
(Date)

(Track Statutory Language of Offense)

See Attached List of Charges, incorporated herein by reference

in violation of Title ___18___ United States Code, Section(s) ___2423, 2422, 2252A, and 1470___ .

I further state that I am a(n) ___Senior Special Agent, ICE___ and that this complaint is based on the
following facts:
(Official Title)

See attached affidavit of Senior Special Agent Josh Findley, Bureau of Immigration and Customs
Enforcement,

Continued on the attached sheet and made a part of this complaint:  ☒ Yes   ☐ No

_____
Signature of Complainant

JOSH FINDLEY
Printed Name of Complainant

Sworn to before me and signed in my presence,

___11/17/2006___                    at    ___Portland, Oregon___
Date                                          City            State

Donald C. Ashmanskas        U.S. Magistrate Judge        _____
Name of Judge                 Title of Judge                 Signature of Judge

# LIST OF CHARGES

1.  Attempt to transport an individual who has not attained the age of 18 years in interstate commerce, with the intent that the individual engage in sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2423(e);

2.  Use a facility of interstate commerce (the Internet) to knowingly persuade, induce, entice or coerce an individual who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, or attempt to do so, in violation of Title 18, United States Code, Section 2422(b);

3.  Knowingly distribute, offer, send, or provide a minor with any visual depiction of a minor engaging in sexually explicit conduct, for purpose of inducing or persuading a minor to participate in any activity that is illegal, in violation of Title 18, United States Code, Section 2252A(a)(6);

4.  Knowingly persuade, induce, entice, or coerce any individual to travel in interstate commerce to engage in any sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422(a);

5.  Knowingly possess material that contains an image of child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2252A(a)(5); and

6.  Use a facility of interstate commerce to transfer obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, in violation of Title 18, United States Code, Section 1470.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON

STATE OF OREGON      :
            :
            :   **AFFIDAVIT**
            :   **in Support of a**
            :   **Criminal Complaint**
            :   **and Application for**
            :   **a Search Warrant**
COUNTY OF MULTNOMAH    :

   **I, Josh Findley, being duly sworn, depose and state:**

   1.   I am a Senior Special Agent (SSA) with the Department of Homeland Security,

U.S. Immigration and Customs Enforcement (ICE), assigned to the Assistant Special Agent in

Charge in Portland, Oregon. I have been so employed since August of 2004. As part of my

duties as an ICE agent, I investigate criminal violations relating to the exploitation of children,

including violations pertaining to the coercion and enticement of minors (18 U.S.C. § 2422) and

the possession and distribution of child pornography (18 U.S.C. § 2252A). I have received

training in the area of child sexual exploitation, including the ICE Special Agent Training and

the United States Army Child Abuse Prevention and Investigation Techniques Course and have

had the opportunity to observe and review numerous examples of child pornography (as defined

in 18 U.S.C. § 2256)[1] in all forms of media, including computer media. I have also conducted

numerous investigations into the sexual exploitation of children. I am a certified undercover

---

1 "Child Pornography means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; . . . [or] (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." For conduct occurring after April 30, 2003, the definition also includes "(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from that of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8).

agent and have acted in such capacity during investigations into the sexual exploitation of minors over the Internet.

2. This Affidavit is made in support of:

a. An application to search the residence of James Reyes, located at 17835 NW Tillamook Drive, Portland, OR 97229, for evidence of violations of Title 18, United States Code, § 2422(a), which makes it a crime to knowingly persuade, induce entice or coerce any individual to travel in interstate commerce to engage in any sexual activity for which any person can be charged with a criminal offense; Title 18, United States Code, § 2422(b), which makes it a crime to use a facility of interstate commerce to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years to engage in any sexual activity for which any person can be charged with a criminal offense; Title 18, United States Code, §2423(e), which makes it a crime to attempt to transport an individual who has not attained the age of 18 years in interstate commerce, with the intent that the individual engage in any sexual activity for which any person can be charged with a criminal offense; Title 18, United States Code, § 2252A(a)(5)(B), which makes it a crime to knowingly possess any material that contains an image of child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer; Title 18, United States Code, § 2252A(a)(6), which makes it a crime to knowingly distribute, offer, send, or provide a minor with any visual depiction, including any photograph, film, video, picture, or computer generated image or picture, whether made or produced by electronic, mechanical, or other means, where such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct, for purposes of inducing or persuading a minor to participate in any activity that is illegal; and Title 18 United States Code, § 1470, which makes it a crime to transfer obscene

PAGE 2 –     AFFIDAVIT

matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years; and

  b.    A criminal complaint and arrest warrant charging James Reyes, date of birth April 4, 1961, with the foregoing offenses.

3.    The information contained within this affidavit is based on my training and experience, my personal involvement in this investigation, and information related to me by other law enforcement officers, including Detective Scott van Raalten of the Hopkinton Police Department, Hopkinton, Massachusetts.

4.    This affidavit is being submitted for the limited purpose of charging a criminal violation and securing an arrest warrant and a search warrant. I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that James Reyes violated 18 U.S.C. § 2422(a), 18 U.S.C. §2422(b), 18 U.S.C. §2423(e), 18 U.S.C. § 2252A(a)(5)(B), 18 U.S.C. § 2252A(a)(6), and 18 U.S.C. § 1470. Where statements of others are set forth in this affidavit, they are set forth in substance and in part.

5.    As a result of the instant investigation described more fully below, there is probable cause to believe that James Reyes violated 18 U.S.C. § 2422(a), 18 U.S.C. §2422(b), 18 U.S.C. §2423(e), 18 U.S.C. § 2252A(a)(5)(B), 18 U.S.C. § 2252A(a)(6), and 18 U.S.C. § 1470, and that evidence of those crimes will be found in his residence.

### Computers, Child Pornography and Child Sexual Exploitation

6.    Based upon my knowledge, training, and experience in child sexual exploitation investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology have revolutionized the way in which

PAGE 3 –    AFFIDAVIT

persons who engage in the sexual exploitation of children exploit those children. Prior to the advent of computers and the Internet, those who would sexually exploit children would generally need to have physical contact with the child or at the very least the child would have to be known to the exploiter so that the exploiter could communicate with the child using a telephone, the mail, etc. More recently through the use of computers and the Internet, those who would sexually exploit children can meet those children using any number of Internet websites. Exploiters communicate with children through electronic mail, instant messages, Internet voice communications, video mail, chat programs, website forums and numerous other sophisticated methods. The Internet has made it easier for exploiters to contact and establish relationships with children as well as to communicate with children in order to coerce and/or entice children to engage in illicit sexual conduct.

      7.     As part of my training, I am familiar with the Internet which is a global network of computers[2] and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state.

      8.     Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail (e-mail). An individual who

---

2

     Computer: The term "computer" is defined by 18 U.S.C. § 1030(e)(1) to mean "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."

wants to use Internet e-mail must first obtain an account with a computer that is linked to the Internet – for example, through a university, an employer, or a commercial service – which is called an Internet Service Provider or "ISP." Once the individual has accessed the Internet, that individual can use Internet mail services, including sending and receiving e-mail. In addition, the individual can visit websites and make purchases from them, or buy a subscription for membership to them.

9.    Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology have also revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-based/subscription-based websites to conduct business, allowing them to remain relatively anonymous.

10.    Computers serve four basic functions in connection with child pornography:

production, communication, distribution, and storage.  More specifically, the development of

computers has changed the methods used by those engaged in child pornography in these ways:

A.    Producers of child pornography can now produce both still and moving images directly from a common video or digital camera.  The camera can be connected directly to the computer, or digital images can be uploaded from the camera's memory card directly to the computer.  Images can then be stored, manipulated, transferred, or printed directly from the computer.  Images can be edited in ways similar to how a photograph may be altered.  Images can be lightened, darkened, cropped, or otherwise manipulated.  The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format.  As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography.  In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

B.    The Internet allows any computer to connect to another computer.  By connecting to a host computer, electronic contact can be made to literally millions of computers around the world.  A host computer is one that is attached to a network and serves many users.  Host computers are sometimes operated by commercial ISPs, such as America Online (AOL) and Microsoft, which allow subscribers to dial a local number and connect to a network which is, in turn, connected to the host systems.  Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks.  In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

C.    The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) websites that offer images of child pornography.  Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography.  These communication links allow contacts around the world as easily as calling next door.  Additionally, these communications can be quick, relatively secure, and as anonymous as desired.  All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet.  Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's

PAGE 6 –      AFFIDAVIT

computer, including the Internet history and cache[3] to look for "footprints" of the Websites and images accessed by the recipient.

D.     The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single floppy disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 40 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime". Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

## THE INVESTIGATION

11.     On August 13, 2006, William Ryberg contacted the Hopkinton Police Department and reported that his former wife's first cousin James Reyes, who lives in Oregon, had previously touched one of his minor daughters in an inappropriate sexual manner during a "piggyback ride." This contact occurred about 5 years prior to the date of the interview. For the purpose of this affidavit I will refer to this minor as Victim 1, who is currently 15 years old. Ryberg also reported that Reyes was currently in contact with Victim 1 via the Internet and through cellular telephone calls and was engaging her in inappropriate sexual conversations. During one of those conversations Reyes told Victim 1 that when he had touched her during the piggyback ride that he was attempting to give her first orgasm to her. Reyes also told Victim 1 that he watches his young neighbor through the window. Ryberg stated that Victim 1 and her

---

3

      "Cache" refers to text, image and graphic files sent to and temporarily stored by a user's computer from a website accessed by the user in order to allow the user speedier access to and interaction with that website.

twin sister, who for the purposes of this affidavit will be referred to as Victim 2, were traveling to Hong Kong and upon their return he would make them available for interview.

12.    On August 27, 2006, Victim 1 and Victim 2 were interviewed by Detective van Raalten. Both Victims stated that Reyes had touched their private areas during piggyback rides and when he would tickle them. Further, that he would put his hands under their clothing and touch their front pelvic area when they would play on the trampoline at his house. The girls told their parents that they were uncomfortable with the way Reyes touched them, but did not provide specific details. Their parents kept them away from Reyes until they moved to Massachusetts. All of this activity occurred about five years prior to the date of this interview. They did not see Reyes again until July of 2006 when they traveled to Utah to go to a funeral. At the funeral Reyes obtained Victim 1's cell phone number and America Online Instant Messenger (AIM) screen name. After the victims returned to Massachusetts, Reyes began contacting Victim 1.

13.    During the August 27, 2006, interview, Victim 1 provided Detective van Raalten with excerpts from AIM chats she had with Reyes, who was utilizing the screen name "sitkabear9." The following are some of these excerpts:

(Victim 1's screen name was replaced with "Victim 1" for the purposes of this affidavit)

sitkabear9: my 12yo neighbor is home…spying on me. I better get some clothes on
sitkabear9: although she has great boobs for her age!

sitkabear9: I love you doing the splits..
sitkabear9: love to see you do that with me under you
sitkabear9: see if you did that for me, then I would want to finish it up and fuk [sic] you

sitkabear9: I need to stop drinking its making me think bad thoughts..
Victim 1: like what
sitkabear9: Like molesting you… lol

PAGE 8 –    AFFIDAVIT

14.     Victim 1 also provided Detective van Raalten with a list of things that Reyes has said to her on the phone.  The following are some of the quotations provided by Victim 1:

"Would you ever have sex with me?"

"Take naked pictures for me!"

"How bout a piggyback ride? I know you used to LOVE those"

"I remember you loved those piggy back rides, One time I had my thumb accidently tilted up, im sure you were a little wet, I could have given you your first orgasm! Haha!"

15.     During the interview Victim 1 and her father, Mr. Reyberg, consented to let Detective van Raalten assume Victim 1's AIM account and Myspace.com account.

16.     On September 15, 2006, both Victim 1 and Victim 2 were interviewed by Margaret Leavitt, a child victim interview specialist.  Both victims provided additional information regarding their past sexual abuse by Reyes.  Victim 1 also reiterated much of the information about her current contacts with Reyes.

17.     On September 10, 2006, Reyes initiated a chat session with Detective van Raalten, who had assumed the on-line identity of Victim 1.  Reyes utilized the screen name of "sitkabear9."  During this conversation Reyes and Detective van Raalten discuss photos Reyes had placed on an on-line photo storage site named Webshots.com.

18.     On September 14, 2006, Reyes initiated a second chat with Detective van Raalten, as Victim 1.  The following excerpts were taken from this chat.

sitkabear9: I would love to share everything with you
Victim 1: any pics of our piggy backs?
sitkabear9: no...but loved it
Victim 1: you remember???
sitkabear9: yes of course I do
sitkabear9: sounds like you do as well
sitkabear9: ???

Victim 1: i do... I have been thinking about those days lately
sitkabear9: in what way?
Victim 1: that I felt confortable when you where around
sitkabear9: yeah, I was really bummed that you guys moved.
sitkabear9: I loved snuggling with you too
sitkabear9: I liked making sure you were happy
Victim 1: I'm older now you know....
Victim 1: 15 year old almost 16

sitkabear9: I would love to snuggle with you., kiss you until you can't stand it anymore
sitkabear9: yes, even make love to you, if you would like that
Victim 1: really....
sitkabear9: massages work too...
sitkabear9: wouldn't you like it?
Victim 1: i am nervous about the making love.....
sitkabear9: why is that?
Victim 1: i want to make sure it is special
sitkabear9: I agree. It is a major event. You don't want anyone that is going to be too fast and rough with you
Victim 1: i was more concerned with my feelings towards that person and doing it right
sitkabear9: I agree
sitkabear9: You need to make sure it is the right timing with you
sitkabear9: what do you mean? doing it right?
Victim 1: i am new at this, learning
sitkabear9: I bet you will take to it very easily
Victim 1: yah

sitkabear9: so I take it you really liked your piggy back rides?
sitkabear9: even when my thumb accidentally slipped up your panties?
Victim 1: i was stange at the time
Victim 1: it was a few years ago, you know
sitkabear9: everyone one is when they are younger
Victim 1: did your thumb accidentely slip ;-)
sitkabear9: you certainly turned out to be a beautiful woman
sitkabear9: maybe...
Victim 1: ty
sitkabear9: did you mind?
Victim 1: maybe... what?
sitkabear9: I knew that you were getting turned on...so I wanted to see if you were...yes you were wet...
Victim 1: did anyone else get a (special) piggy back ride?
sitkabear9: nope...just you...
Victim 1: liz?
sitkabear9: yeah, but I didn't do that with her
sitkabear9: but she did see me naked once
sitkabear9: I was taking a bath with lauren and she walked in on us
Victim 1: i missed out.....

PAGE 10 –     AFFIDAVIT

sitkabear9: too bad it wasn't you...
Victim 1: so what did you feel when you accidentally slipped?
sitkabear9: I don't have any problem with you seeing me naked
sitkabear9: ???
Victim 1: you said wet before but anything else?
Victim 1: I can only see pics of you though.... a least for now.
sitkabear9: well your lips were very moist...
sitkabear9: I wanted to rub your clit until you orgasmed, but I think you were too scared
Victim 1: oh
sitkabear9: I don't have pics of me making love to anyone...
sitkabear9: so It is just mainly me
sitkabear9: I feel bad talking to you like this.
Victim 1: but I have to wait to see them, right :'(
Victim 1: y
sitkabear9: I would much rather be there showing you...lol

sitkabear9: I feel very comfortable with you. I wouldn't be saying any of this if I didn't
Victim 1: are there any other times you could have given me an O other than the piggy back?
sitkabear9: I feel kinda weird
sitkabear9: that was the only time I could have touched you
Victim 1: oh
sitkabear9: I would have loved to have a bath with you...lol
Victim 1: y do you feel weird
sitkabear9: actually you were like 10 then...that would have been weird
Victim 1: not sure if I could orgasm them.
Victim 1: you feel weird now?
sitkabear9: I heard girls can
sitkabear9: kinda...cause I haven't done anything like this before
Victim 1: oh
sitkabear9: But you really turned me on, when I saw you in SLC
Victim 1: yah
Victim 1: how much??
sitkabear9: you are so damn beautiful....and extremely sexy
sitkabear9: oh I could have been sporting a woody if I thought about it for awhile
sitkabear9: I would have made out with you if you had followed me out of the gym
Victim 1: what would you have done with that
sitkabear9: done with what?
Victim 1: woody
sitkabear9: I would have kissed you, very passionately and deeply
Victim 1: where??
sitkabear9: probably nothing. having sex is your choice...
sitkabear9: anywhere you wanted me to
sitkabear9: where do you prefer that I kiss you?
Victim 1: where do you want to??
sitkabear9: lips...neck....ears...breasts....back...tummy...etc...
Victim 1: etc....

PAGE 11 –    AFFIDAVIT

Victim 1: ever been with a younger woman???
sitkabear9: where my thumb accidentally slipped at.....
sitkabear9: a few years younger...
Victim 1: inexperianced virgin?
sitkabear9: only once...my gf in middle school
Victim 1: oh
sitkabear9: but we were like the same grade...
sitkabear9: I would be able to teach you have to be properly pleasured
Victim 1: that was a long time ago ;-)
sitkabear9: yeah...like a long time ago
Victim 1: you have the patients to teach?
sitkabear9: but I wouldn't mind being your first...
sitkabear9: yes...for you...
Victim 1: what about oral?
sitkabear9: oral is great...I love doing oral
Victim 1: giving/ recieving
sitkabear9: gtg

---

19.     On September 19, 2006, Jim Reyes posted a message to Victim1's Myspace.com

account.  The message indicated that his wife, Sally, was suspicious of his activities on the

Internet and had canceled his AIM screen name.  On September 23, 2006, Jim Reyes posted

another message to Victim 1's Myspace.com account.  The message stated that he had a new

yahoo account "emstoy69."

20.     On October 1, 2006, Reyes initiated a third chat session with Detective van

Raalten, as Victim 1, one of two chat sessions they had on this date.  Reyes' screen name had

changed to "emstoy69."  During this chat Reyes described in detail numerous sexually explicit

acts that he wished to engage in with Victim 1.  They also discussed Reyes sending pictures to

Victim 1.  Detective van Raalten provided heartachexonxtv@yahoo.com as an address where

Reyes could send pictures to Victim 1.  The following excerpt is a discussion of Reyes traveling

to Massachusetts to see Victim 1:

---

emstoy69: I think I may have had a hard time keeping my mouth from both sets of your lips..
Victim 1: oh, what do you mean?
emstoy69: upper and lower....I would kiss you till you couldn't stand it...
Victim 1: ha
emstoy69: I want to play with your clit..
Victim 1: yah, with what?
emstoy69: your clitoris....that is what will give you your orgasms
Victim 1: i know that..... with what to use
emstoy69: I am going to have to french kiss you down there and give you the thrill
Victim 1: when?
emstoy69: right now if you were here
emstoy69: or I was there
Victim 1: but im not
emstoy69: '
emstoy69: I can still dream
Victim 1: yah
emstoy69: so will you send me pics of you too?
emstoy69: I want you so badly....it hurts...I even looked at airfare..
Victim 1: oh..... how much is it
emstoy69: around $1,000
Victim 1: hol sh.........
emstoy69: yep
emstoy69: I would have to plan it out
emstoy69: sally would notice the money being gone from the account

---

21.     On October 2, 2006, Reyes sent two email messages from emstoy69@yahoo.com

to the email address previously provided by Detective van Raalten.  These emails contained

numerous nude and partially nude photographs of Reyes.  The photographs appear to be taken in

Reyes' house using a mirror.  At least three of the photographs are centered on Reyes' penis and

only show him from the navel to the knees.

22.     On October 19, 2006, Reyes initiated another chat session with Detective van

Raalten, as Victim 1.  During this chat session they discuss the pictures Reyes sent to Victim 1

and the fact that they left nothing to the imagination.  They further discussed Reyes' desire to

travel to Massachusetts to be with Victim 1

PAGE 13 –    AFFIDAVIT

23.     On October 21, 2006, Reyes attempted numerous times to contact Victim 1 via

AIM; however, Detective van Raalten did not respond to any of the attempts.

24.     On October 22, 2006, Reyes initiated another chat session with Detective van

Raalten, as Victim 1.  During this conversation they discuss that airfare prices have come down,

but that Reyes still has no good "excuse" to travel to Massachusetts without his family.  The

following excerpt from this chat discusses Victim 1 traveling to Oregon to see Reyes.

---

Victim 1: I wish I was old enough to travel on my own or had enough money to come out there
emstoy69: I could get you the money.  Having your dad let you go is another problem
Victim 1: yah
emstoy69: I know, we are both trapped...I hate it
emstoy69: I would much rather hang out with you!!!!!

---

25.     On October 25, 2006, Reyes initiated another chat session with Detective van

Raalten, as Victim 1.  During this session they discuss the price of airfare from Oregon to

Massachusetts, the fact that Victim 1 is 15 years old and Reyes could go to jail for statutory rape

if they had sex, the fact that Reyes sent nude photos to Victim 1 and wants more pictures of her,

that Reyes is talking to Victim 1 on a laptop in his house, and a sexual dream Reyes had about

Victim 1.  The following is an excerpt from that conversation:

---

emstoy69: I just worry about if I fly back and become your lover, how hard it would be on you
when I leave
emstoy69: the thought of making you sad...makes me sad.
Victim 1: oh
emstoy69: i don't want to do anything to make you sad
Victim 1: it wont be sad if you promise to come back
emstoy69: i would much prefer to at least be able to see you weekly....not just a one night stand..
Victim 1: well we may just have to take what we can get........ at first
emstoy69: i really love how you trust me to be your first.  I just know how much you would
want to be with me after that

PAGE 14 –     AFFIDAVIT

Victim 1: i want someone i can trust..... not just some fball player or something like that :-)
emstoy69: I know, but I can't help thinking about how much crap you have already been through and I don't want to put you through anymore
emstoy69: thanks sweetie...
Victim 1: i see
emstoy69: That does make me feel a lot better
Victim 1: i could really use a hug now ;-)
emstoy69:
emstoy69: xoxoxoxoxo
emstoy69: I could use a hug and kiss as well.
emstoy69: I wish I didn't have to work all the time. Also that Sally wouldn't know or care what I was up to.
Victim 1: have you thought about what could happen with your family and wife over this.
emstoy69: believe me, if you were here, I could get away a lot more often.
emstoy69: yes. that is what bothers me
emstoy69: I don't want my kids to hate me
emstoy69: I just want to help you too
Victim 1: well i don't want to get in the way either
Victim 1: i don't want to be a homewrecker if you know what i mean
emstoy69: I understand. It would have to be under the sheets.
emstoy69: I understand. But I really do care for you. that is what makes things so hard.
Victim 1: i know
emstoy69: I can imagine what your friends would think of if they knew you were hanging with me
Victim 1: yah... not really sharing this with anyone....
Victim 1: what would your friends say if they knew i was 15
emstoy69: same here. Actually I could wind up in jail
Victim 1: y
emstoy69: All it takes is someone to say we had sex and bam...off to jail I go
emstoy69: you are under 16.
Victim 1: oh.... right
emstoy69: it is considered statutory rape
emstoy69: we are over 4 years apart
emstoy69: I would love to love you, but I do worry about you and your feelings
Victim 1: ill be ok... I've made it this far
emstoy69: yeah I know
Victim 1: can we change the subject..... this is all a little depressing

---

26.     On November 2, 2006, Reyes initiated another chat session with Detective van

Raalten, as Victim 1. During this conversation they make initial plans for Victim 1 to travel to

Oregon to see Reyes. The following excerpts were taken from this chat:

Victim 1: this weekend is supose to be in the 30's 40's
emstoy69: yucky!
Victim 1: how is it out there
emstoy69: I prefer the 80s
emstoy69: about 60ish
emstoy69: rainy though
Victim 1: i would rather be there then
emstoy69: well come on...
Victim 1: when
emstoy69: I will even send you a ticket!
Victim 1: yah right......
emstoy69: I am serious
Victim 1: really....
emstoy69: why not?
emstoy69: That way you can come visit us...
Victim 1: well i might be able to do that soon
emstoy69: it is a 6 hour flight...
emstoy69: that would be kewl
emstoy69: Bagby will have snow up there soon
Victim 1: dad is going away to a job thing in a couple of weeks
Victim 1: i might be able to come out then
emstoy69: hmm...
emstoy69: should I put you up in a hotel or stay here?
Victim 1: what do you thing is better?
Victim 1: think
emstoy69: depends on what you have in mind...lol
Victim 1: well what do you have in mind......;-)
emstoy69: you...
Victim 1: still.........
Victim 1: haha
emstoy69: still what?
emstoy69: always...damn you...
emstoy69: you haunt my dreams
Victim 1: might be reality......
emstoy69: been waking up at 4am thinking about you.
emstoy69: always have a woody for some strange reason...
emstoy69: the boys and I are supposed to go camping on the 17-19th. down at the coast
Victim 1: can you split the ticket with me or something like that?
emstoy69: we would have to get yo to the airport from your house
emstoy69: why split the ticket?
Victim 1: well i have some money saved up, you don't have to pay for the whole thing
emstoy69: that is not the problem
emstoy69: I can pay. you are worth it
Victim 1: i can get to the airport
Victim 1: how do you know im worth it..... taken a chance....

emstoy69: I would love to take the chance.

emstoy69: You are very gorgeous. Definitely worth it.

Victim 1: thx

Victim 1: so if the boys are gone what does that mean

emstoy69: hmm...girls are having a spa weekend themselves.

emstoy69: so that leaves me, by my little lonesome self

Victim 1: on the weekend of the 17-19th?

emstoy69: yep

Victim 1: well now what?

emstoy69: I am looking at airfares.

emstoy69: would you leave on Friday or Saturday?

Victim 1: i could leave Friday evening but would have to be back Sunday afternoon

emstoy69: I just checked. it would be about $400

Victim 1: what should we do about the ticket.....

emstoy69: what do you think we should do?

Victim 1: can you send me the ticket or some cash?

emstoy69: I could book the ticket, electronically and send it to your email account

emstoy69: then you print it out and go the the airport

emstoy69: do you really want to do this?

Victim 1: yah

Victim 1: u?

emstoy69: it would be great

Victim 1: would it just be the two of us

emstoy69: Don't you think people on your end might freak?

emstoy69: We could make it that way.

Victim 1: they are not going to know

emstoy69: maybe check into a hotel over by the airport or up in the gorge

emstoy69: how do you know?

emstoy69: what if they call your friends house?

Victim 1: i can go to a friends house for a couple of nights too

Victim 1: there is no real reason for anyone to call.... or i can just tell everyone here i am going to visit

emstoy69: thats cool

Victim 1: wont the airline need a credit card to validate the ticket when i get to the airport... how am i going to do that.

emstoy69: no, it is an electronic ticket with a number...already prepaid. all you need is your ID

Victim 1: it doesn't matter that someone else bought it?

emstoy69: nope

Victim 1: k

emstoy69: just want to make sure we cover our tracks

Victim 1: or just nervous.... do i make you nervous

Victim 1: oh

emstoy69: remember, you are still considered underage

emstoy69: no. not at all

Victim 1: we haven't done anything

emstoy69: I think you are perfect the way you are
emstoy69: I know, but if people find out...e.g. your dad, sally...then they can prosecute me without your permission
Victim 1: oh.... i don't want that
emstoy69: I know. that is why we have to be careful.
Victim 1: k
emstoy69: you don't want me to be somebody's bitch in prison do you?
Victim 1: omg no
emstoy69: I would love to love you though
emstoy69: I am afraid that I would hurt you though
Victim 1: if i come over there, are you going to make love to me for the first time?
emstoy69: I mean we are 3,000 miles apart. I think you would want to be with me more than once.
emstoy69: that is up to you.
Victim 1: im asking
emstoy69: I would love to...
emstoy69: and 2nd....3rd....
Victim 1: when do you think we can finalize some plans?
emstoy69: I would be honored to
emstoy69: hoepfully soon.

Victim 1: don't know if i can sleep
emstoy69: give yourself a quick orgasm. go to sleep
Victim 1: haha
emstoy69: just look at my pics and while you do it...haha
emstoy69: so did you destroy those pics yet?
Victim 1: no.... i have them is a special place
emstoy69: ic
emstoy69: so you don't hurl all the time
Victim 1: so no one else will see them.....
emstoy69: do you look at them once in awhile?
emstoy69: I see your pic daily...want more though
Victim 1: want more of what?
Victim 1: specifically
emstoy69: you...naked...pics...
Victim 1: maybe in a couple of weeks..... if you want it
Victim 1: maybe ill let you take the pics
emstoy69: something to remember you by
Victim 1: ;-)
emstoy69: kewl...

27.    On November 5, 2006, Reyes initiated another chat session with Detective van

Raalten, as Victim 1. During this conversation they finalize the plans for Victim 1 to travel to

Portland, OR, on November 17, 2006, and depart back for Massachusetts on November 19, 2006. Reyes details that he has developed a cover story to tell his family. He states that he will feign an illness while at the coast with his sons and use that as an excuse to rent a hotel room where the two of them will stay until Sunday, November 19, 2006. Reyes stated that he will rent a hotel in Tillamook, OR, for two nights and "that way we have Friday night and all day Saturday to make love." They also discuss how to keep their activities from their families.

28.     On November 5, 2006, Detective van Raalten received an email message from emstoy69@yahoo.com, which contained an electronic travel confirmation from Expedia.com. The confirmation was for one adult fare for Victim 1, departing Boston, MA, at 5:00pm on Friday November 17, 2006, arriving in Portland at 11:54pm on America West Airlines, and returning Sunday, November 19, 2006, on Continental Airlines. The confirmation shows that it was originally sent to emstoy69@yahoo.com.

29.     On November 9, 2006, Reyes initiated another chat session with Detective van Raalten, as Victim 1. In this chat they discuss the confirmation of the airline reservation and where Reyes will meet Victim 1 at the airport. The following excerpts are additional conversations from this chat:

---

emstoy69: I am planning on bringing some massage oils for you too.
emstoy69: to give you nice body massages.
Victim 1: ahh
emstoy69: yes?
Victim 1: ic
emstoy69: have you ever had anyone give you a full body massage?
Victim 1: no.... don't think so
emstoy69: I gave you a specific body massage, but now you get the whole thing..
emstoy69: you never had anyone at least rub your back?
Victim 1: what do you mean
emstoy69: I bet the boys have tried to rub your front?

PAGE 19 –     AFFIDAVIT

Victim 1: specific body message?
emstoy69: from head to toe
emstoy69: just a little joke about your piggy back rides.
Victim 1: oh.... that was a message
emstoy69: yes.  and you get more of those

emstoy69: I don't have any naked pics of you though
Victim 1: once in a while.... i forwarded them to some friends
emstoy69: I might have to bring my cameras along to the hotel.

emstoy69: so you are planning on wearing me out..???
Victim 1: like i am going to tell... you don't like surprises do you
emstoy69: yes I do...
emstoy69: do I get to videotape your surprises?
Victim 1: what would you do with a videotape
emstoy69: or are you planning on doing the videotaping?
emstoy69: that way I get to relive the moment...

Victim 1: hey... what ever happened to the neighbor you used to talk about
emstoy69: so how long has it been since you thought about playing with me?
emstoy69: she is still back there.  still checks things out once in awhile.  she is still giving me a show
emstoy69: it is cold here, so no more skinny dipping
emstoy69: Besides, I can't see how guys could even get inside a 12 year old
emstoy69: I think that would hurt them too much
Victim 1: yah
emstoy69: but I have seen it on the internet, guys with girls as young as 5
Victim 1: you have?
emstoy69: They generally were screwing their butts, so that tells me the vagina is too tight
Victim 1: where did you see that???
emstoy69: yep.  It used to be all over the place, now it has gone away
emstoy69: They would be in chat rooms and newsgroups
Victim 1: you have any pics
emstoy69: I saw one, like 10 years ago, where the buy was in the girls butt about 3 inches..
emstoy69: yeah, I saved a couple.
emstoy69: but was planning on dumping them
Victim 1: i don't think i have ever seen anything like that....
emstoy69: the girl looks like she didn't mind
emstoy69: he must have stretched here a lot before that though
Victim 1: what pics did you keep?
emstoy69: that one, cause I was curious.
Victim 1: and she was like 10?
emstoy69: a couple others.. does that turn you are?
emstoy69: yep, bald as can be and no boobs
Victim 1: don't know or if i am just curious
emstoy69: do you want to see it?
Victim 1: i guess
emstoy69: I will see if I can find it

Victim 1: k...email?

emstoy69 wants to directly connect.

emstoy69 cancels request; no connection was made. (Note: For best results, you and your buddy should use the latest version of AIM.).

emstoy69: I tried to send you a pic...didn't work

Victim 1: oh did you find one

emstoy69: yes, I have them now

emstoy69: I just can't email from this machine

Victim 1: oh

emstoy69: so does this information abut me borther you?

Victim 1: no not really....

emstoy69: ok. cause I don't think I am a perv

Victim 1: ok... guess i wont be able to see those pic huh

emstoy69 wants to directly connect.

emstoy69 is now directly connected.

emstoy69:

emstoy69:

emstoy69: I am trying to send it now

emstoy69:

Victim 1: whos on the phone

emstoy69: nobody.  sorry

emstoy69: can you see the pic now?

Victim 1: whos on the phone in the pic

emstoy69: nobody

Victim 1: oh

Victim 1: how do you know how old the girl is?

emstoy69: the title said it

Victim 1: oh

emstoy69: kinda young huh?

Victim 1: i guess

emstoy69: you would have been about that age when you were here

Victim 1: 10?

emstoy69: yep.

emstoy69:

emstoy69: I prefer this pic.

emstoy69: we will be playing soon enough

emstoy69: did you like the last one i sent you?

Victim 1: you cant tell how old anyone is...

emstoy69: the one girl has to be young.  she has no hair or boobs

emstoy69: I mean didnt you start developing around that age?

emstoy69: the last two could be around your age..

emstoy69: so do you like the pics?

Victim 1: weird

emstoy69: why weird?

Victim 1: there are plenty of girls with small boobs... don't mean their 10

emstoy69: sex is a part of life. I enjoy myself. I hope you will enjoy me
emstoy69: thats true.
emstoy69: so are you totally disturbed now?
emstoy69: or what?
Victim 1: no.... just not want i expected
emstoy69: you keep pausing. what are you doing?
emstoy69: what do you mean?
Victim 1: don't no really
emstoy69: see I need to get rid of those pics.
emstoy69: It shocked me at first...
emstoy69: but happens a lot out there...so they say
emstoy69: I just deleted them. please do the same.
Victim 1: i guess.... everything is on the internet
Victim 1: k
emstoy69: exactly
emstoy69: anyhow, I plan on picking you up at the airport at 11:50, then we will drive to the hotel in Tillamook
Victim 1: ok

---

30.     During the above detailed chat, which took place on November 9, 2006, Reyes

sent Victim 1 two image files. One of these image files centered on a prepubescent minor

spreading her legs exposing her vagina. The child was using her hands to further expose her

genitals. Also visible in the image was the erect penis of an adult male, which was nearly

touching the exposed vagina. The second image depicted what appears to be a nude teenage boy

and teenage girl engaged in sexual intercourse. The female is lying on her back on an elevated

surface and the boy is standing facing her with his pelvic region against hers.

31.     On November 9, 2006, Reyes initiated another chat session with Detective van

Raalten, as Victim 1. This was the second chat session on this date. During the chat they

discuss Victim 1 packing for her trip and her activities at school.

32.     On November 12, 2006, Reyes initiated another chat session with Detective van

Raalten, as Victim 1. During this chat Reyes discusses not wanting to push Victim 1 into doing

anything she isn't ready for and then states that he "can't wait to kiss those beautiful lips of yours…"

33. On November 12, 2006, Reyes initiated a second chat session with Detective van Raalten, as Victim 1. During this chat Reyes discusses his anticipation of Victim 1's trip to Oregon and describes some of the sexual contact he intends on having with her, like kissing her all over and bathing her.

34. On November 14, 2006, Reyes initiated another chat session with Detective van Raalten, as Victim 1. In this chat session Reyes informs Victim 1 that he has made hotel reservations at the Shilo Inn in Tillamook, OR. Reyes also informs Victim 1 that she should tell anyone who asks at the airport that she is going to see a sick cousin.

35. On November 14, 2006, Reyes initiated a second chat session with Detective van Raalten, as Victim 1. During this chat Reyes details that the Boy Scout troop that his sons are members of is going to the beach for a crabbing trip and that he intends on feigning an illness in order to get away to the hotel to be with Victim 1. The following excerpts are from this chat:

---

Victim 1: promise me that any pics you take this weekend are protected from anyone else seeing them
emstoy69: good. I hope we have a great weekend together!
Victim 1: we will
emstoy69: of course they will be.
emstoy69: Are you kidding. remember the part about going to prison..
emstoy69: anyone see me with you and puts it all together. well they don't need your permission to prosecute me
Victim 1: you seem worried....
emstoy69: besides. Those are private pics for us only. forever
emstoy69: nope not at all

---

PAGE 23 –   AFFIDAVIT

36. On November 14, 2006, Reyes initiated a third chat session with Detective van Raalten, as Victim 1. During this chat Reyes details that he deletes his AIM logs to keep his wife from finding out about his relationship with Victim 1.

37. On November 15, 2006, Reyes initiated a chat session with Detective van Raalten, as Victim 1. During this chat Reyes details that he will likely be wearing his Boy Scout uniform when he picks Victim 1 up at the airport. Detective van Raalten requests that Reyes not be late to the airport and that he not go into the hotel room before picking Victim 1 up. Reyes agrees.

38. On November 15, 2006, Detective van Raalten, as Victim 1, initiated a chat session with Reyes. During this chat Reyes asks if anyone suspects that Victim 1 is traveling to Oregon this weekend. Reyes asks if Victim 1 is planning on losing her virginity this weekend and tells her that he will teach her whatever she wants. He states that he just wants to snuggle and get to know her better and that if sexual things happen then they happen. Then he relates that he would like to have her experience the "best orgasm you have ever had!!!"

39. I have reviewed all of the AIM chat logs between Detective van Raalten and Reyes and in numerous chats Reyes refers to being at his home on his computer. In at least one chat Reyes describes the computer as a laptop computer. Reyes also discusses the fact that either his wife or children are in the area and that he may need to sign off of the chat in a hurry if they come into the room he is in.

40. I have obtained and reviewed Oregon drivers license information concerning James Reyes. The information details Reyes' residence as 17835 NW Tillamook Dr, Portland, OR 97229. Additionally I reviewed the photo on record with the Oregon Department of Motor

Vehicles and it appears to be the same individual as was pictured, nude, in an email to Victim 1 from emstoy69@yahoo.com.

41.     On November 16, 2006, I checked property records for Washington County and found that Reyes and Sally Buehner are the registered owners of the residence at 17835 NW Tillamook Drive, Portland, OR, 97229.  Additionally, I checked with Portland General Electric (PGE), who confirmed that James Reyes was the registered user at that address.

42.     Based on my training and experience I know that persons who are interested in sexually exploiting children use techniques commonly referred to as "grooming" techniques. These persons will often engage children in sexually explicit conversations, however, when specific acts are discussed the exploiter will tell the child that it is up to the child to decide what will occur sexually, if anything.  These persons attempt to make the child think that it is the child's own idea and desire for sexual activity to occur.  This gives the exploiter the appearance of caring for the child and making it appear as though the exploiter was just wanting to fulfill the child's needs.  These persons often achieve this by initially discussing sex, showing a child pornography, or talking about sexual fantasies or dreams with the child.  Then they ask the child if they would be interested in that type of activity.   I believe that Mr. Reyes has employed these techniques in an effort to lure or entice Victim 1 to travel to Oregon and engage in sexual acts with him.

## Conclusion

43.     Based on the above information, I have probable cause to believe that James Reyes has violated:

A.     Title 18, United States Code § 2422(a), which makes it a crime to knowingly

       persuade, induce, entice, or coerce any individual to travel in interstate commerce

PAGE 25 –     AFFIDAVIT

to engage in any sexual activity for which any person can be charged with a criminal offense, to wit: Reyes repeatedly contacted and engaged Victim 1 (or Detective van Raalten, posing as Victim 1) in sexually explicit conversations, describing sexually explicit conduct he wished to engage in with Victim 1 and then offering to purchase and eventually purchasing an airline ticket for Victim 1 to travel to Portland, Oregon, to meet with Reyes in order to engage in sexual contact. Under Oregon state law, it is a felony for an adult to have sexual intercourse with a minor under the age of 16.

B.    Title 18, United States Code § 2422(b) which makes it a crime to use a facility of interstate commerce to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, to wit: Reyes repeatedly contacted and engaged Victim 1 in sexually explicit conversations, describing sexually explicit conduct he wished to engage in with Victim 1. Reyes uses these conversations to persuade, induce and entice Victim 1 to consensually engage in sexually explicit conduct with Reyes. It is a felony under Oregon state law for Reyes to engage in that conduct with a minor under the age of 16.

C.    Title 18, United States Code § 2423(e), which makes it a crime to attempt to transport an individual who has not attained the age of 18 years in interstate commerce, with the intent that the individual engage in any sexual activity for which any person can be charged with a criminal offense, to wit: Reyes repeatedly contacted and engaged Victim 1 in sexually explicit conversations,

describing sexually explicit conduct he wished to engage in with Victim 1. Reyes offered and then eventually purchased an airline ticket for Victim 1 to fly to Portland, Oregon, to engage in sexually explicit conduct at a hotel in Tillamook, Oregon.

D. Title 18, United States Code § 2252A(a)(5)(B), which makes it a crime to knowingly possess any material that contains an image of child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, to wit: Reyes tells Victim 1 that he has images of children engaged in sexually explicit conduct on his computer. Reyes then sends Victim 1 two images of children engaged in illicit sexual conduct, as described in paragraphs 29 and 30. Reyes states to Victim 1 that he deleted the images from his computer, however, I know from my own training and experience as well as discussions I have had with agents from my office who are certified computer forensic specialists, that although a person may delete a file from an electronic storage media such as a computer hard drive the file is most likely still recoverable from the electronic storage media using licensed forensic software, tools, and techniques available to computer forensic specialists.

E. Title 18, United States Code § 2252A(a)(6), which makes it a crime to knowingly distribute, offer, send, or provide a minor with any visual depiction, including any photograph, film, video, picture, or computer generated image or picture, whether made or produced by electronic, mechanical, or other means, where such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct, for purposes of inducing or persuading a minor to participate in any activity that

is illegal, to wit: Reyes knowingly distributed two images depicting children engaged in illicit sexual conduct, as described in paragraphs 29 and 30, to Victim 1, whom Reyes knows to be a 15-year-old minor female. Reyes distributed the images to Victim 1 using AIM, causing a file transfer to occur over the Internet originating in the State of Oregon and terminating in the Commonwealth of Massachusetts. I know that these files were transferred in a means of interstate commerce, i.e. the Internet. Furthermore, Reyes distributed the images in order to demonstrate to Victim 1 that children do engage in illicit sexual conduct for the purpose of inducing or persuading Victim 1 to engage in illicit sexual conduct with him.

F.  Title 18 United States Code § 1470, which makes it a crime to transfer obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, to wit: Reyes transferred several images of himself posing nude or partially nude including images which focus on his genitalia and referenced in paragraph 20, to Victim 1, whom Reyes believed to be a 15-year-old minor female.

44.  Based on the above information I have probable cause to believe that evidence, fruits and instrumentalities of the above-mentioned crimes will be found at James Reyes' residence at 17835 NW Tillamook Drive, Portland, OR 97229.

45.  In consideration of the foregoing, I respectfully request that this court:

A.  Issue a criminal complaint and arrest warrant for James Reyes, date of birth, April 4, 1961, charging him with the above-referenced crimes; and

PAGE 28 –  AFFIDAVIT

B.    Issue a search warrant for James Reyes' residence at 17835 NW

Tillamook Drive, Portland, OR 97229, further described in Attachment A,

authorizing the seizure of the items set forth in Attachment B and a search

of the same.

46.    Based on the foregoing, I believe that Reyes will be at the Portland International

Airport to meet Victim 1 when her plane arrives at 11:54pm on November 17, 2006, pursuant to

the flight arrangements Reyes made for her.  I anticipate arresting Reyes on the criminal

complaint at the airport.  I plan to execute the requested search warrant for Reyes' residence

following his arrest.  In chat sessions I have reviewed Reyes clearly knows his activity is illegal

and is actively trying to hide his activities from his family and law enforcement.  Executing the

search warrant prior to the arrest would alert Reyes of law enforcement's interest in him, and

could lead him to flee or attempt to conceal or destroy evidence.  Similarly, waiting until the

morning following Reyes' arrest to execute the warrant could give Reyes enough time to enlist

the help of his wife or someone else to conceal or destroy evidence.  Therefore, I request that the

search warrant for Reyes' residence be endorsed for service at any time of the day or night.

## Computer Searches

47.    Based upon my knowledge, training and experience, and based on the training

and experience of other Special Agents with whom I have spoken, I am aware that searches and

seizures of evidence from computers commonly require agents to seize all computer items and

the system itself (hardware, software, and instructions) to be searched later by a qualified

computer expert in a laboratory or other controlled environment.  This is almost always true for

the following reasons.

48.     Computer storage devices can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

49.     Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even "hidden", erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from a destructive code imbedded in the system as a "booby trap"), the controlled environment of a laboratory is essential to its complete and accurate analysis.

50.     In order to fully retrieve data from a computer system, the analyst needs all electronic storage devices as well as the central processing unit (CPU). As in this case where the evidence consists partly of graphic files, the monitor and printer are essential to show the nature and quality of the graphic images which the system could produce. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

PAGE 30 –     AFFIDAVIT

51.    In addition, there is probable cause to believe that the computer and its storage devices, the monitor, keyboard, modem, hardware and software are all instrumentalities of the crime of production, distribution, receipt and otherwise transacting in sexually explicit depictions of minors in violations of federal law, and should all be seized as such as provided in Title 18 United States Code, Section 2253.

52.    The term "computer," as used herein, is defined pursuant to Title 18, United States Code, Section 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

53.    The terms "records," "documents," and "materials" includes the following: e-mail addresses, screen names, passwords, receipts, notebooks, files, telephone toll records, and any other correspondence reflecting computer use.

54.    In searching for data capable of being read, stored or interpreted by a computer, law enforcement personnel executing this search warrant will employ the following procedure:

a.    Upon securing the premises, law enforcement personnel trained in searching and seizing computer data (the "computer personnel") will make an initial assessment of any computer equipment and storage devices to determine whether these items can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve the data, based on the number of computers, the size and number of the data storage devices, the complexities of the system and the reasonable safety of agents performing the search.

b.    If the computer personnel determine it is not practical to perform an on-site search of the data within a reasonable amount of time, then the computer equipment and storage

PAGE 31 –    AFFIDAVIT

devices will be seized and transported to an appropriate law enforcement laboratory for review. The computer equipment and storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein.

c.     In searching the data, the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein.

d.     If the computer personnel determine that the data does not fall within any of the items to be seized pursuant to this warrant or is not otherwise legally seized, the government will return these items within a reasonable period of time not to exceed 60 days from the date of seizure unless further authorization is obtained from the Court.

55.     I have discussed the criminal complaint, search warrant and accompanying affidavit in this case with Assistant United States Attorney (AUSA) Gary Sussman. AUSA Sussman stated that in his opinion, the affidavit sets forth probable cause and is legally sufficient for issuance of the requested search and arrest warrants and criminal complaint.

Josh Findley, Special Agent.
US Immigration and Customs Enforcement

Subscribed and sworn to before me this __17__ day of November, 2006.

Donald C. Ashmanskas
United States Magistrate Judge

PAGE 32 –     AFFIDAVIT